[PHILADELPHIA, APRIL 3D, 1841.]

## THE COMMERCIAL BANK OF CINCINNATI
### *against* PLEASANTS.

#### IN ERROR.

In the month of January, 1836, the Commercial Bank of Cincinnati sent by A., their agent, a large sum of money, in bank notes, to Philadelphia. On the arrival of A. in Philadelphia, he called upon B., and asked him to take charge of it. B. declined this, but told him that he might have the use of his fire proof for the purpose. A. accordingly went to the fire proof and deposited certain packages, and at the request of B. locked the door of the fire proof and took away the key with him. Afterwards he returned to B.'s office ; and in the course of the same day a package containing $100,000 in post notes of the Bank of the U. S., which had been brought on by him, was missing. Search was made in the fire proof without success. The Commercial Bank of Cincinnati, on hearing of the fact, offered by public advertisement a reward of $10,000 for the recovery of the package. The advertisement stated that the package "was lost" at Wheeling, or between that place and Philadelphia, or possibly on the arrival of the bearer of it in Philadelphia ; and that the reward would be paid on the delivery of the package to B. at Philadelphia, or to other persons at other places named ; and added that if inconvenient to the finder to deliver the money, he might deduct the reward and remit the balance by mail to the bank. In the month of August following, C., who was the principal person in the office of B., discovered the missing package on the floor of the fire proof, and delivered it to the cashier of the Girard Bank in Philadelphia, where it was deposited to the credit of the Commercial Bank of Cincinnati. *Held*, that the package was not *lost* or *recovered* in the sense of the advertisement; and at all events, that as it had not been delivered to either of the persons named in the advertisement, C. was not entitled to the reward.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action on the case brought by William Pleasants against the President, Directors and Company of the Commercial Bank of Cincinnati, to recover the sum of $10,000, which had been offered by the defendants as a reward for the recovery of a package containing $100,000, belonging to the defendants, and supposed to be lost.

The action was commenced by a foreign attachment, to which the defendants put in bail.

(The Commercial Bank of Cincinnati *v.* Pleasants.)

The first count of the declaration recited that, " whereas heretofore, to wit, on the eighteenth day of April, in the year of our Lord one thousand eight hundred and thirty-six, at the county aforesaid, the said " The President, Directors and Company of the Commercial Bank of Cincinnati, caused to be printed and published in a certain public newspaper commonly called The Pennsylvanian, a certain advertisement, dated 'Commercial Bank of Cincinnati,' the seventeenth day of March, in the year one thousand eight hundred and thirty-six, and by the said advertisement they the said defendants did then and there, to wit, on the day and year last aforesaid, at the city aforesaid, promise and undertake to pay a reward of ten thousand dollars on the recovery of a package containing one hundred thousand dollars in post notes of the Bank of the United States, of the denomination of five hundred and one thousand dollars lost by the said defendants." The plaintiff then averred, that he, " confiding in the promise and undertaking of the said defendants, so by them in manner and form aforesaid made, did afterwards, to wit, on the twentieth day of August, in the year aforesaid, at the county aforesaid, recover and find the said package, and did restore the same to the said defendants, by reason whereof, the said defendants then and there became liable to pay, and ought to have paid to the said plaintiff, the aforesaid reward of ten thousand dollars, to wit, at the county aforesaid; and being so liable they the said defendants in consideration thereof, afterwards, to wit, on the day and year last aforesaid, at the county aforesaid, undertook, and then and there promised the said plaintiff to pay him the said sum of money when they the said defendants should be thereunto afterwards requested."

The second count recited, " and whereas also afterwards, and before the making of the promise and undertaking of the said defendants hereinafter next mentioned, to wit, on the 17th day of March, in the year aforesaid, at the county aforesaid, a certain package belonging to the said defendants containing one hundred thousand dollars in post notes of the Bank of the United States, of the denominations of five hundred dollars and one thousand dollars, had been lost, to wit, at the county aforesaid; and thereupon heretofore to wit, on the day and year last aforesaid, at the county aforesaid, the said defendants had caused to be printed and published a certain advertisement, and therein in consideration of the premises had undertaken and promised to pay the sum of ten thousand dollars on the recovery of the said package; and the said plaintiff confiding in the promise and undertaking of the said defendants, afterwards, to wit, on the twentieth day of August, in the year aforesaid, at the county aforesaid, found the said package, and did then and there deliver the same to the said defendants; and the said defendants by means of the premises then and there recovered the same; of all which matters and things, the defendants on the day and year last

(Commercial Bank of Cincinnati v. Pleasants.)

aforesaid, at the county aforesaid, had notice whereby the said defendants then and there became liable to pay the said plaintiff the said sum of ten thousand dollars, when they the said defendants should be thereunto afterwards requested; and being so liable they the said defendants in consideration thereof, afterwards, to wit, on the day and year last aforesaid, at the county aforesaid, undertook, and then and there promised the said plaintiff to pay him the said sum of money, when they the said defendants should be thereunto afterwards requested."

There was also a count for money had and received.

The defendants pleaded *non assumpsit*, and payment with leave, &c.

The cause came on for trial before STROUD, J., on the 31st of October, 1839; when the counsel for the plaintiff opened that this was an action to recover $10,000 reward offered by the defendants for the recovery of $100,000 in post notes, lost by the defendants and found and restored by the plaintiff. That on or about the 29th of January, 1836, Charles Cist left Cincinnati with a large amount of money, among the rest $100,000 in 500 and $1000 notes. He came to Charles Macalester, who was general agent then of the bank, and put the packages into his fire proof, taking the key. About three o'clock he went to the Schuylkill Bank to deposit the money; on getting there he found he had not this package of $100,000; and that on the 20th of August, 1836, the plaintiff found this money, and took it to the Girard Bank, and there deposited it to the credit of the defendants.

The plaintiff then gave in evidence the following advertisement:

" $10,000 Reward.

" The above reward will be paid on the recovery of a package containing *one hundred thousand dollars*, in post notes of the Bank of the United States, of the denominations of $500 and $1000, which was lost at Wheeling, or between that place and Philadelphia, between the 29th of January and the 3d of February. The package was made up at St. Louis, and addressed on the outside to " Wm. S. Hatch, Esq.," cashier of the Commercial Bank of Cincinnati, and was forwarded without being opened from the Commercial Bank to Philadelphia. The bearer proceeded to Wheeling by the mail stage, and thence by Washington, Pa. to Pittsburgh, in the Good Intent Line of stages, by Greensburgh and Bedford to Philadelphia. The loss is supposed to have taken place after the arrival of the bearer at Wheeling, and before he reached Philadelphia; but may possibly have occurred on his arrival at the latter city.

The above reward will be paid on the delivery of the said pack-

age to Charles Macalester, Esq., Philadelphia; to John Snyder, Esq., cashier of the Bank of Pittsburgh; to John List, Esq., cashier of the N. W. Bank of Virginia at Wheeling; or to the cashier of the Commercial Bank of Cincinnati; and no questions will be asked.

Measures have been adopted to stop the payment of the notes: the description of them has been extensively circulated—they will be of no value except to the owners.

If inconvenient to the finder to deliver the money, he is authorised to deduct the reward, and remit the balance by mail to the bank.

J. S. ARMSTRONG, President.

Commercial Bank of Cincinnati, March 17, 1836."

The following parol evidence was then given on the part of the plaintiff.

W. D. Lewis, sworn.—" The plaintiff called on me one morning after the loss of the package, and handed it to me saying, he had been looking for some papers in a fire proof. It was a sealed package addressed. I think it had the name of Hatch, which had been erased. I don't state that as a fact. It was this very package and contained these very notes; which I had counted immediately. The amount was $100,000. The very package described. It was deposited to the credit of the Commercial Bank of Cincinnati. Absorbed long ago in their business with us. Some time after loss."

Cross-examined.—" I don't remember whether any person came with Mr. Pleasants. When he handed it to me, Mr. James Nevins and Mr. Schott were present. I have no recollection of Mr. Toland being present. Mr. Pleasants said he found the money in the fire proof of Mr. Macalester. He said he was searching among some old papers for some particular paper, not for this, among the papers of Macalester & York, for a paper of Macalester & York. Mr. Pleasants was in Mr. Macalester's employment, as a clerk I understood. He had been some time. I think it was a few months after the advertisement the money was brought. I think Mr. Pleasants went from the bank to the employ of Mr. Macalester. I can give the date on reference. He said he found them on the floor of the fire proof, and my impression is there was a space between the shelf and the wall of the fire proof. I examined it afterwards and thought it must have slipped in putting it on the shelf. There are several shelves. I allude to that immediately above the floor. It was quite a small package. Not longer than the bundle exhibited. Mr. Pleasants did not state, that I recollect, Mr. Toland's agency. One of the gentleman suggested that it was a good day's work—hoped he would get the reward. And I stated it was best he should retain the package, and handed it back to him desiring him, or expressing to him my opinion that he had better retain it, which he declined doing, and said he wished it to go to the credit of the bank. The feeling I had was that he should retain it until he had made up

(Commercial Bank of Cincinnati v. Pleasants.)

his mind whether he would claim the reward. I think I expressed that idea to him in words. He made no reply, except, that he preferred its going at once to the credit of the bank. He said nothing as to his claiming the reward. No offer was made by him towards deducting the reward. The money was passed, without any condition whatsoever, to the credit of the bank. He did not desire any condition."

Charles Macalester, sworn.—" Early in the spring of 1836, Charles Cist, who acted as agent of the Commercial Bank of Cincinnati, reported himself to me as the bearer of a considerable sum of money, and asked me if I would take charge of it. I declined, but told him he could have the use of my fire proof which he had used on several similar occasions, requiring him to take the key. He went to the proof, and, I suppose, deposited his money—and was going away when I told him to lock the fire proof and take the key, as I was determined to have no responsibility; which he did. The object was to lend out the money to some of the banks here. Next I saw of him was near 3 o'clock, when he said he wanted his money. His first call was as early as 9 o'clock; he said he had an arrangement for disposing of it with the Schuylkill Bank. I went out of the office, came back and found that the fire proof door was shut, and told him he had no time to spare if he meant to use it that day. He told me he had his money, putting his hands on his pocket so—and showing his pocket handkerchief with something in it. I saw nothing of him till I returned from dinner and found him sitting in my office; he told me he had met with a great misfortune; that he had lost one of his packages of money. I asked how much; he said he was almost afraid to tell—then said, a package containing $100,000. I asked where he had first missed it; he said when he got to the Schuylkill Bank. I inquired where he had last seen it; he said, he thought, in his boarding house, that morning, but not certain—positively at Wheeling. The cashier of the Schuylkill Bank came in soon after. He thought he had put it in the fire proof in the morning. It was searched—Levis was there, I think—by Mr. Cist, Mr. Henry Toland and myself. I think Mr. Levis was present. We could find nothing of the package. The bank was advised of the loss."

Cross-examined.—" Mr. Pleasants was in my employ then. Had been used to come over when in the Girard Bank of evenings. He was the principal person in my office. I was absent from the city when the money was found; returned the same day. My impression is that Cist put it on the floor. I saw a pocket handkerchief on the floor, that I believe, contained the money, on the floor under the lowermost shelf. There was small space between the shelf and the wall of the fire proof. Shelf about 15 or 18 inches from the floor. Left of the door; shelves are right and left of the door. I was

standing by the fire, in front of the door of the fire proof; two doors, outside single, and inside, folding doors—but on his retiring I saw the pocket handkerchief. It was not on the shelf; I could not see the shelf. The walls on each side are in a line with the shelves. The handkerchief between the right and left shelves. I saw a handkerchief in Mr. Cist's possession when he was afterwards going to the bank. I infer the money was in several packages. He told me so; four or five packages. I inferred he had a package in each pocket and in the handkerchief. Coloured handkerchief, silk or cotton. The fire proof was moderately light. I stood between the window and the door of the fire proof—floor level with bottom. Fire proof built within a year. Sand on the bricks of the floor, no mortar. The floor of the fire proof contained papers. No books on the lower floor; a small trunk was directly in front, on the floor. I saw Mr. Cist go in; advised him to examine it. Saw Mr. Toland; examined myself. I think they finished before I began. The examination was made leaving the trunk and papers in there; it lasted a few minutes each, sufficient to look around. Fire proof five feet wide, and three deep, about. About three feet wide, excluding the shelves; three shelves on each side. Books on the other shelves which were taken out every morning. I think Mr. Cist was in and out about two or three times during the morning."

Re-examined.—" I called in one of the young men, Michael Brady, and requested him to take out of the fire proof what books and papers we would probably want. When Cist was depositing his money, nobody else was present that I recollect. Mr. Pleasants generally is at a desk in the front office. Mr. Brady saw the packages put in. He took out the books, and Mr. Cist deposited the packages. Three persons were attached to the office, Wm. Pleasants, J. P. Pleasants and Michael Brady. In January, 1836, Mr. Pleasants came exclusively, and has continued ever since with me. Only one key to the fire proof. The young man took it to my house at night. Left in the door during the day. The plaintiff was constantly in my employ from the time of the loss to the discovery of the money and till now."

Here the plaintiff closed his case.

The defendants then gave in evidence a deposition of Henry Toland, Jr., taken upon interrogatories to New York; the material parts of which were as follows:

" My first knowledge of the discovery of the package was I believe in the month of August, in the year 1836. I do not recollect the day of the date of the month, but recollect distinctly it was on a Saturday, and I think in the latter part of the month. On that day, I think between twelve and one o'clock, on coming into the office from the street, I met Mr. Pleasants the plaintiff coming out of the back room; he told me to come into the back room and unlocked

(Commercial Bank of Cincinnati v. Pleasants.)

the fire proof. It was our custom to leave the fire proof unlocked. He then told me to stoop down and look. I did so. There was a good deal of sand at that time on the floor of the fire proof, which had been built I believe about twelve months. I knelt down to look, but having just come in from the light, I could distinguish nothing but a piece of brown paper against the wall, and another piece on the sand. I made some hasty remark, and he told me to look again, when I made out the direction on the paper against the wall to be William S. Hatch, Esq., and it was marked in the corner $100,000. I exclaimed it was the lost package, and took it out; at which Mr. Pleasants said something disapproving of my touching it. I then left the package in the office, and went over for my father, who had a store at that time No. 64, Dock street, but he was not in; he came into Mr. Macalester's office shortly after, and he and Mr. Pleasants took the package as I understood from them to the Girard Bank and deposited it to the credit of the Commercial Bank of Cincinnati, and took out a certificate of deposit, (I think.) Mr. Macalester was out of town at the time the package was found. I knew nothing of my own knowledge of the circumstances attending the placing of the package in the fire proof closet, as, I was not in the office of Charles Macalester at the time Mr. Cist came on with the money. There was no one in the room when I saw the package and took it out as stated above, but Mr. Pleasants and myself. Michael Brady, a boy in the employ of Mr. Macalester, was in the front room. The other paper before mentioned I found to be only a piece of waste paper. The deponent believes that he has in his answer fully detailed all his knowledge of the circumstances."

" At the time referred to in his first answer, he was in the office of Mr. Macalester, with a view of becoming acquainted with the business, and had been there from February, 1836 ; but had received no salary."

. The learned judge charged the jury as follows:

" The defence is placed almost entirely upon legal grounds. I have concluded, therefore, to confine my remarks to you, to the particular points raised, and to so much of the evidence as gives rise to them.

The points stated in the order in which they were made, are these—

1. That in point of fact the package was never lost.

2. That if taken to have been lost by the bank, and found by the plaintiff, yet the place where it was found, and the relation, in which the plaintiff stood to the bank at the time of the loss, preclude him from legally claiming the reward offered.

3. That supposing the facts and the law embraced in the two preceding propositions to be in favour of the plaintiff, yet by his conduct he has waived his right to recover.

(Commercial Bank of Cincinnati *v.* Pleasants.)

These three positions were taken in the *opening* of the defence. The learned counsel who summed up on that side of the cause, has added two others; *one* of which is, that the advertisement promises the reward on condition that the package should be delivered to Mr. Macalester of this city, or the cashier of the Pittsburgh Bank, or the cashier of the N. W. Bank of Virginia, or the cashier of the Commercial Bank of Cincinnati—the defendant.

The *other* is, that Mr. Henry Toland. Jr., and not the plaintiff, was the actual finder, and entitled therefore, if any one is, to the reward.

The 1st, 4th and 5th points, present questions of fact which you are to determine; and it will be convenient to notice them before speaking of the others. And the counsel having drawn our attention to the 5th point just before closing his address, I will touch upon it at once.

1. It is said the *finder* of the package was not the plaintiff, but Mr. Henry Toland, Jr.

If you think, from the evidence, that the plaintiff had discovered the package prior to his calling Mr. Toland and requesting him to enter the fire proof and make examination there in the manner related by Mr. Toland, that the plaintiff took the package to the Girard Bank, and deposited its contents there to the credit of the defendant, you may infer if you think proper to do so, that the plaintiff was the finder. It does not appear that Mr. Toland has ever claimed the reward. In his answer to one of the interrogatories propounded to him, " he has stated the manner in which he became acquainted with *the finding* of the package."

The next question I shall notice, is the first before stated, i. e. that the package was never lost.

The package appears to have been out of the possession of the bank, from March 17th, to August 20th, 1836.

Was it then lost in the sense of the advertisement? This is a question of fact for your decision.

[Here the advertisement was read to the jury.]

*Lost*, is a comprehensive word, and I submit to the jury, should be taken here in its largest sense. The law is eminently and emphatically a practical science, and its grand end, the attainment of justice in the every day pursuits of mankind, precludes generally the application of refined and metaphysical rules as the proper tests of truth. In dealing with the evidence of witnesses, the language of parties spoken or reduced to writing in an informal instrument such as a newspaper advertisement, it is especially necessary to act upon this principle. If, therefore, the question turned on the import of the word *lost*, I submit to you, the construction should be favourable to the plaintiff.

But I do not think it turns upon the meaning of this word. The reward is offered for the restoration of the money to the bank, who

was out of possession of it, and did not know where it was, and had no certain means of acquiring this knowledge or regaining the possession.   This is the plain view of the subject, and if you so understood the testimony, you will be justified in finding for the plaintiff on this point.

Then as to the defendant's 4th point.   That the advertisement offers the reward on condition that the package should be delivered to Mr. Macalester, &c.

It was argued, you will recollect, that as the money was found here, it ought to have been delivered to Mr. Macalester, who is named in the advertisement, and is known to live here.   The reason why this was not done would seem to be, that Mr. Macalester was not in the city when it was found.   But I do not think there was any obligation to deliver it to Mr. Macalester ; that any such condition is imposed upon the finder by the advertisement.   For as I before remarked, the beginning of the advertisement states that the reward will be given for the recovery of the money by the defendant.   The naming of Mr. Macalester and others as persons to whom it might be delivered, was with a view to the supposed convenience of the finder.   These gentlemen were thus constituted agents to receive it and to pay the reward.   But this was merely a mode of transmission for convenience.   But besides, the cashier of the Bank of Cincinnati, is one of the persons named, and he for all substantial purposes connected with the matter, may be regarded as the bank itself; and further, the finder is authorised to break open the package, take out the reward, and transmit the balance to the bank by the mail.   I hold it to be unimportant, therefore, how the restoration of the money was effected, provided the bank was subjected to no extraordinary or unnecessary expense in obtaining it.

Has it been recovered?   This is a question for you.   The identical notes—the package as a whole is advertised for.   It does not appear to have been sent to the defendant in this shape.   It was taken to the Girard Bank, broken open, and, as I understood Mr. Lewis, deposited as a general deposit of so much money as the notes purported to be worth on their face, to the credit of the defendant. Strictly, I do not think this was proper, although it has not been made the subject of animadversion.   It ought to have been placed in the Girard Bank as a *special* deposit.   But if you think from the evidence the defendants have received the money as it was deposited, from the Girard Bank, without objection, you may, if you think proper to do so, consider the condition—the substantial condition mentioned in the advertisement—the restoration of the money, as complied with by the plaintiff.

I will now briefly notice the remaining questions, which are questions of law.

1. Admitting that the package was lost by the bank, and subsequently found by the plaintiff, and restored to the defendant, yet the

place where it is assumed to have been as lost, being the fire-proof of Mr. Macalester, and Mr. Macalester being, it is said, an agent of the defendant, and the plaintiff a clerk in his employ, and in contemplation of law, the servant of Mr. Macalester, it is argued, that this condition of circumstances presents a legal bar to the plaintiff's recovery.

1. As to the fact.—Was Mr. Macalester the agent of the bank for the keeping of this package? His evidence is, that he positively refused to take any charge of it; removed the books he might want during the day from the fire-proof; told Mr. Cist he should himself lock it up and keep the key; and Mr. Cist, as he says, locked it up and took the key. Mr. Macalester also says there was but one key to the fire-proof.

How then can he be considered the agent of the bank in the keeping of this money?

But, it is said, the counsel of the plaintiff in opening his case, stated that Mr. Macalester was a *general* agent of the bank. I believe this language was used by the counsel. But what is meant by a general agent of the bank? There is no proof apart from the language of counsel on this subject. But if he had been a general agent of the bank, to act at his discretion for the interest of the bank whenever he pleased, or whatever else may be the meaning of these expressions, he had a right to disclaim and refuse any particular agency; and he avers he did disclaim and refuse the custody of this money.

There are no facts, therefore, that I perceive, to found this question, so far as concerns Mr. Macalester's agency, upon. But still, as the point has been made, I charge you distinctly, that admitting Mr. Macalester to have been the agent of the bank as is asserted, and that the plaintiff was his servant, these circumstances could not interfere with the plaintiff's right of recovery.

The last point is, that the plaintiff, by his conduct, has waived his right to recover. The ground on which this is alleged is, that the plaintiff, when it was suggested to him by Mr. Lewis that it might be expedient, in order to claim the reward, to detain the package instead of depositing it as was done, said he would deposit it, without saying what his intentions were in regard to the reward.

Now the advertisement contemplates receiving the *whole* package, proposes such delivery, and names Mr. Macalester and others agents to recover it. It adds that no question would be asked, or I should have supposed this mode of transmission was designed for *honest* finders, and that the other mode, authorising the finder to pay himself and transmit the remainder by mail, was for those of a different character. Taking the facts as stated by Mr. Lewis in regard to the plaintiff's conduct at the time of the deposit, I see nothing from which a waiver of his rights can be implied.

The amount to be given, should your verdict be for the plaintiff,

has been adverted to by both sides.  On the part of the defendant it has been said you ought not to give the entire amount of the reward offered, that you should consider what the plaintiff deserved from the trouble he has had.  I do not think so.  I construe the advertisement as a contract to pay any one who might find and restore the package, the particular sum mentioned, $10,000.  It is as binding a contract in this respect as if the agreement was for erecting a house.  If you find for the plaintiff you ought to give at least the $10,000, and you may give at your discretion, as damages, interest from the institution of the suit, which was three years ago yesterday, or any less sum for interest."

The jury found for the plaintiff the sum of $11,800, being the amount of the reward with interest; and the defendant having taken a bill of exceptions to the charge, removed the record to this court, and assigned the following errors.

" 1. The judge erred in his instruction to the jury upon the point whether Henry Toland, Jr., or the plaintiff below, was the finder of the money.

2. The judge erred in charging that the jury might find for the plaintiff below, although the defendants had not lost the money.

3. The judge erred in leaving to the jury the interpretation of the advertisement; and particularly of the word *lost*, therein used by the defendants below.

4. The judge erred in instructing the jury that the money had been lost.

5. The judge erred in his charge upon the second point made by the defendants below.

6. The judge erred in charging that the restoration of the money by the plaintiff below, and the recovery thereof by the defendants below, as alleged to have taken place, were such a restoration and recovery of the money as entitled the plaintiff below to the reward under the advertisement.

7. The judge erred in taking from the jury the question of the agency of Macalester for the defendants below.

8. The judge erred in charging that there was no agency of Macalester for the defendants below.

9. The judge erred in charging that the agency of Macalester for for the defendants below could not interfere with the right of the plaintiff to recover.

10. The judge erred in charging that there was no evidence from
Vol. vi.—49

which the jury might infer a waiver of the reward by the plaintiff below.

11. The judge erred in charging that if the jury found for the plaintiff below, they must give him a verdict to the amount at least of ten thousand dollars.

12. The charge should have been for the defendants on each of the following points:

1. That the facts given in evidence did not constitute a loss of the package.
2. That the place where the package was said to be found, and the relation in which the plaintiff below stood in the bank, precluded him from legally claiming the reward offered.
3. That the conduct of the plaintiff below was a waiver of his claim to the reward.
4. That the terms of the advertisement were not complied with in the delivery of the package.
5. That the evidence was deficient in exhibiting the plaintiff below as the actual discoverer of the package.

13. That the judge misconstrued the term '*lost,*' and also misconstrued the term "*recovery,*" as used in the advertisement."

Mr. *C. Ingersoll* and Mr. *C. J. Ingersoll* for the plaintiffs in error.

Mr. *Sharswood* and Mr. *Meredith* for the defendants in error.

The opinion of the court was delivered by

Huston, J.—William Pleasants was plaintiff below. His claim arose as follows:—In the spring of 1836, the Commercial Bank of Cincinnati sent to this city Mr. C. Cist with a large sum of money. The object was to lend out the money to some of the banks here. Mr. Cist went to Mr. C. Macalester, who had sometimes acted for the bank, and asked him to take charge of the money. Mr. Macalester refused to do so; but offered the use of his fire-proof. Mr. Cist went to the fire-proof, and, as Mr. Macalester supposed, deposited the money. From where Mr. Macalester stood he could see into the room in which the fire-proof was, and see into the fire-proof. The fire-proof was about three feet deep and five feet wide, with shelves on each side of the door, and a space in the middle, between the shelves, of about three feet. The lower shelf was about a foot or fifteen inches from the floor. Mr. Macalester saw the handkerchief in which he supposed was the money, on the floor, rather under the lower shelf, on one side. He told Cist to take the key, and he did so, having locked the door, after the books, which might be used that day, were taken out. "I think," says Mr. Macalester, "Cist was in and out two or three times during the morning." Mr. Macalester was in and out several times. At length, he found Mr. Cist

(Commercial Bank of Cincinnati *v.* Pleasants.)

there, who told him he had made arrangements with the Schuylkill Bank.　On being told he had not much time to spare in bank before three o'clock, he replied, he had his money here, touching his pocket. Mr. Macalester saw his pocket-handkerchief, or part of it.　Mr. Macalester, when Cist was going out to the bank, thought the money was in several packages, and in each pocket.　When this occurred, the door of the fire-proof was shut—whether locked or not, does not appear.

On returning from dinner, Mr. Macalester found Cist sitting in his office in distress; he said he had lost a package of money enclosing one hundred thousand dollars; had missed it at the Schuylkill bank; thought he had seen it at his boarding-house that morning; was positive he had seen it at Wheeling; thought he had put it in the fire-proof that morning.　The cashier of the Schuylkill Bank came in, and he, Cist, Mr. Macalester, and Mr. Toland, searched the fire-proof, and did not find it.

The persons in Mr. Macalester's office were, William Pleasants, (who was the principal person in the office,) J. P. Pleasants, and Michael Brady.　The latter person, says Mr. Macalester, saw the money put in—he took out the books before Cist put in the money.

The bank at Cincinnati was informed of the loss, and published the following advertisement:

'$10,000 Reward.—The above reward will be paid on the recovery of a package containing one hundred thousand dollars, in post notes of the Bank of the United States, of the denomination of five hundred and one thousand dollars, which was lost at Wheeling, or between that place and Philadelphia, between the 29th of January and the 3d of February.　The package was made up at St. Louis, and addressed, on the outside, to 'William S. Hatch, Esq.,' cashier of the Commercial Bank of Cincinnati, and was forwarded without being opened, from the Commercial Bank to Philadelphia.　The loss is supposed to have taken place after the arrival of the bearer at Wheeling, and before he reached Philadelphia, but may possibly have occurred on his arrival at the latter city.

The above reward will be paid on the delivery of the said package to Charles Macalester, Esq., Philadelphia; to John Snyder, Esq., cashier of the bank of Pittsburg; to John List, Esq., cashier of the N. W. Bank of Virginia, at Wheeling; or to the cashier of the Commercial Bank at Cincinnati, and no questions will be asked.

Measures have been adopted to stop the payment of the notes; the descriptions of them have been extensively circulated; they will be of no value except to the owners.

If convenient to the finder to deliver the money, he is authorised to deduct the reward, and remit the balance, by mail, to the bank.

　　　　　　　　　　　J. S. Armstrong, Pres't.

Commercial Bank of Cincinnati,
　　March 17, 1836.''

(Commercial Bank of Cincinnati *v.* Pleasants.)

Matters remained thus until the latter end of August, 1836, at which time the plaintiff below, about noon, on coming out of the back room, met H. Toland, Jr., who was coming from the street into the front room.    Mr. Toland had been a short time with Mr. Macalester to acquire some acquaintance with business, but had no salary. " Mr. Pleasants told me," says he, " to come into the back room, and he unlocked the fire-proof; (it was our custom to leave the fire-proof unlocked ;) he then told me to stoop down and look ; I did so ; there was a good deal of sand at that time on the floor of the fire-proof, which had been built at that time about ·twelve months.    I knelt down to look, but having just come in from the light, I could distinguish nothing but a piece of brown paper against the wall, and another piece on the sand.    I made some hasty remark, and he told me to look again, when I made out the direction on the paper against the wall to be ' William S. Hatch, Esq.,' and it was marked on the corner ' $100,000.'    I exclaimed it was the lost package, and took it out, at which Pleasants said something disapproving of my touching it.    I then left the package in the office, and went over for my father, who had a store, at that time, No. 64 Dock St., but he was not in ; he came into Mr. Macalester's office soon after, and he and Mr. Pleasants took the packages, as I understood from them, to the Girard Bank, and deposited it to the credit of the Commercial Bank of Cincinnati, and took a certificate of deposite, (I think.) Mr. Macalester was out of town at the time the package was found."    He then goes on to state, that he was not in the employ of Mr. Macalester when the package was left, and only knows of it by report ; that no other person than himself and Mr. Pleasants was in the back room when he saw the paper, and took it up.    Michael Brady, a boy in the employ of Mr. Macalester was in the front room.

Mr. Lewis, cashier of the Girard Bank, proved that " the bundle or package was brought to the bank, and, after some conversation, opened, counted, and deposited to the credit of the Bank of Cincinnati, and absorbed long since in their business with us."

At the time the package was carried to the Girard Bank, and before it was opened, something was said to Mr. Pleasants about retaining the package until he had claimed the reward, or made up his mind whether he would claim it.    To this he made no other reply than the request that it should go at once to the credit of the Commercial Bank of Cincinnati.

The amount of the charge of the judge of the District Court was distinctly that the plaintiff is entitled to recover.

In forming an opinion on the meaning and effect of a proposition expressed in words or written, there is seldom any more required than to know the circumstances in which the party was placed, the object to be obtained, and the compensation proposed to be given: metaphysical, and logical, and (unless in professional matters) technical acumen is not required, and sometimes misleads.    The word

*lost,* like most other words, has a different signification according to the other words in connection with which it is used, and the subject to which it is applied. It is often used so that it is correctly applied on one state of facts, and not correctly applied in a different state of facts. Most men, who have transacted much business, have, at times, looked for a paper, and used the expression that it was lost; if out of the person's possession, and not in the possession of some other to whom he gave it, he will say it is lost; if he afterwards finds it in his own possession, or that of some person to whom it was properly given, or in some place where it was properly put, he says it was not lost, it was overlooked or mislaid. An article in the possession of the owner, or of a person to whom he gave it, or in a place where he or that person put it, and where it remains safely, is not lost.

So the word *recover* has its meaning affected by circumstances under which it is used, or the connection in which it is used.

Evidently, the reward was offered under the impression that Mr. Cist had dropped the package, or that it had been taken out of his possession without his knowledge, in which case the words *lost* and *recover* would be proper.

Mr. Cist was the agent of the bank. If he or his wife, when he got home, had found the package in his trunk, enclosed in another package of papers, or enveloped in some article of clothing, Mr. Cist being an honest man, it would never have been lost—only mislaid or overlooked.

If, by some mistake, William S. Hatch, instead of giving this package to Mr. Cist, had put it in the safe at Cincinnati, no one would have known where it was, but it would not have been lost, though it would have been mislaid, and no one in the bank have known where it was for some weeks or months; and neither Mr. Hatch nor any officer of the bank could have become entitled to the reward by seeing it; for it had not been lost, it was not recovered; and as it had been in the possession and was in the possession of Mr. Hatch, no one would deliver it to him, in the fair import of the terms, "on the delivery of it to William S. Hatch," &c.

There seems also some misconception as to the situation of Mr. Macalester in this business. He was not the agent to put out this money, and he refused to take charge of it until it was disposed of. He was, therefore, in no way answerable if never seen more. But he was the agent to receive it for the bank if it had been lost. On the money being put into his possession, by a person who had found it or stolen it, the reward would have been earned; but if, without his knowledge, it had been overlooked in his fire-proof, and had never been out of it, and Charles Macalester himself had first seen it, it would never have been lost, never recovered, and never could be said to be delivered to Charles Macalester, in whose possession it had been all the while, though without his knowledge. The ad-

(The Commercial Bank of Cincinnati *v.* Pleasants.)

vertisement was not written for such a state of facts, and Mr. Macalester never would have claimed the reward ; and if he had, would not have recovered it. Now, William Pleasants, the principal man of business in the office, was in the place of Charles Macalester, and for the purpose of all official business, was Charles Macalester. Any stranger having found this package where it had been really lost, if such had been the case, who had brought it to the office, and delivered it in the office to William Pleasants, in the absence of Mr. Macalester, and taken his receipt for it, could have recovered the reward from the bank. On the supposition, then, that it was always in the fire-proof of Mr. Macalester, it was never *lost,* only overlooked ; it was not, could not be delivered to Charles Macalester, it was always in his possession, and the case provided for by the advertisement never had occurred, and never could occur ; for I repeat —the accidental seeing it by the plaintiff was the same as if Mr. Macalester had first seen it.

The case was argued as if it was certain that the package had never been out of the fire-proof of Mr. Macalester. If it had been taken from that place, and returned from compunction of conscience, or fear of detection, it would not make the case of the plaintiff below better.

Mr. Macalester was, by the advertisement, appointed by the bank its agent to receive the package. On the delivery of it to him, the reward became due. But it was not delivered to him. It was discovered in the case in his office, that is in his possession, and placed beyond his control. I have come to the conclusion, that while in his fire-proof it was not lost, but if the broadest meaning of *lost* is to be adopted, and thus make it lost while there, and the claim is made by one who did nothing more than see what others overlooked, the principle must be carried through, and it ought literally to have been delivered to Mr. Macalester as one of the four persons named. This was not done, but it was taken out of his power and delivered where he had no control over it. He who claims a large sum for doing what required no exertion of ingenuity or labour of body, but solely on the ground of the literal performance of what was required in the proposal, must show that he performed every part, and not that he did one of the things required, and omitted or went contrary to the other requisitions, or some of them. The judgment of the court below is reversed, and a *venire de novo* awarded.

ROGERS, J., dissented.

Judgment reversed, and a *venire de novo* awarded.